CHARLES DERVARTANIAN *vs.* NARRAGANSETT HOTEL, INC.

APRIL 22, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is an original petition for workmen's compensation under general laws 1938, chapter 300. The case is here on the petitioner's appeal from a decree of the superior court denying and dismissing the petition.

The petitioner received an injury arising out of and in the course of his employment with respondent on November 17, 1951. In the petition he describes such injury as follows:

"Traumatic lumbo-sacral and bi-lateral sacro-iliac strain with resultant right sciatica. Traumatic neuritis of right arm; Traumatic aggravation of previously existing arthritis of spine." At the hearing in the superior court he relied on two medical witnesses, Dr. Harry M. Kechijian and Dr. Roland Hammond, to prove such injury. They testified that in their opinion he was so injured and totally incapacitated thereby.

The respondent denied that petitioner received any injury as above described or that he was incapacitated for work. It also filed a special plea of res judicata in which it alleged that after the accident of November 17, 1951 it entered into a preliminary agreement with petitioner for compensation for total incapacity and paid him compensation thereunder until, on its petition for review, the superior court suspended the same on February 18, 1953; that a decree to such effect was duly entered by that court; and that no appeal was taken therefrom.

The petitioner did not deny the facts alleged in the plea but claimed that his injury had been improperly described in the preliminary agreement as "bruised right side"; that he could not prove his incapacity was due to such an injury; and that, therefore, he did not appeal. He further claimed that the injury as described in the instant petition was wholly different and was the only proper description of the injury which he received on November 17, 1951. In the circumstances the trial justice reserved decision on the plea until the cause had been fully heard on its merits. Thereafter he denied and dismissed the petition.

In support of its position that petitioner was not injured as alleged and was no longer incapacitated for work, respondent principally relied upon the testimony of Dr. Stanley D. Simon. He examined petitioner on January 15, 1952, July 21, 1952, and February 2, 1953. After the first examination he found that petitioner had suffered a myofascial low back strain but could not find any other injury. As a result of his examination he expressed the opinion that petitioner

was not then incapacitated; that from an orthopedic point of view his condition was good; and that there was a "marked functional overlay and malingering." He based his conclusions on X rays of petitioner's back and certain objective tests of which petitioner was unaware. Doctor Simon was not impressed by petitioner's subjective symptoms upon which Dr. Kechijian and Dr. Hammond had largely if not exclusively relied. Rather he was suspicious since he could find no reasons for those symptoms in the X rays or his objective tests. His ultimate conclusion as a result of all three examinations was that such symptoms were feigned and that petitioner was malingering.

There was thus a clear conflict in the evidence as to whether petitioner was incapacitated by the physical injury described in the petition. Relying upon the testimony of Dr. Simon the trial justice found that he was not. Since there was legal evidence to support such finding we cannot disturb it. The trial justice also overruled respondent's plea and held that petitioner's injury was a low back strain and, therefore, entirely different from the injury described in the preliminary agreement. No question of the correctness of that ruling is raised on the appeal before us.

The petitioner alone has appealed and contends under numerous reasons of appeal that the decree is erroneous because it is against the law and the evidence and the weight thereof and because of alleged erroneous rulings "on the admission and rejection of testimony and evidence." He has briefed such contentions under two points: First, errors of law inherent in the final decree; and secondly, errors of law occurring during the trial.

His most important argument in support of the first point is that the medical evidence shows that he is incapacitated by a psychical injury growing out of his physical injury of November 17, 1951 and that such evidence is undisputed. He bases his claim not on the testimony of his medical witnesses but on that of Dr. Simon who expressed the opinion that petitioner's condition was poor because of a "marked

functional overlay." In his brief he states that such testimony "could only mean that petitioner was suffering from a neurosis or psychical condition connected with his physical injury rendering it impossible for petitioner to return to work." He purposely omits the doctor's reference to "malingering" because he claims it must be ignored in the absence of an explicit finding by the trial justice of such malingering.

The petitioner concedes that if the trial justice found that he was malingering that would be the end of his case. But he maintains that there is no such finding in the decision or the decree. He even argues that if there were such a finding there would be no warrant for it in Dr. Simon's testimony. Apparently realizing that he cannot support his appeal as far as it depends upon the existence of a physical injury he has seized upon a restricted portion of Dr. Simon's testimony to bolster up a claim of psychical injury that he did not even attempt to prove by his own medical witnesses.

However, we do not agree with petitioner's contention that the trial justice made no finding of malingering. In his decision he evaluates Dr. Simon's testimony in these words: "Dr. Simon testified that he had observed evidence of 'marked functional overlay and malingering', and, that there was no organic basis for his complaints at that time and no orthopedic reason why he could not return to his prior employment. Dr. Simon's detailed testimony is convincing that his conclusions were sound." Elsewhere in his decision the trial justice states that he relied on such testimony particularly in reaching his own conclusions. We think the above-quoted words show that he adopted the doctor's view that petitioner was malingering.

The sixth finding of fact in the decree that petitioner "was not incapacitated by reason of any psychical condition related to the injury sustained November 17, 1951" is to be read in the light of the trial justice's decision. That such finding was intended to mean that petitioner did not sustain

any psychical injury is borne out by the second finding which reads as follows: "2. The only injury that the petitioner proved resulting from the fall of November 17, 1951, was a myofascial low back strain." When those findings of fact are read together in connection with the language of the decision on which they are based we think it may fairly be considered an implied finding that petitioner was malingering rather than suffering from a bona fide psychical injury resulting from his physical injury.

However, petitioner contends that Dr. Simon's testimony does not go to that extent. On the contrary he claims it clearly indicates that from a psychical point of view he was incapacitated. There is no merit in such contention. It unwarrantably restricts the scope of the doctor's opinion of petitioner's psychical symptoms by ignoring the bases of them, namely, malingering and feigning. We think a fair reading of all his testimony concerning petitioner's capacity for work will show that he was convinced petitioner did not want to work and feigned symptoms of nonexistent injury in order to avoid it. The trial justice did not err in refusing to adopt petitioner's conception of Dr. Simon's testimony.

But assuming that his contention has some force it would still not avail him anything on this appeal. In such a case there would be a clear conflict in the evidence as to whether petitioner's condition was psychical or physical. His own medical witness Dr. Hammond in answer to a question of the trial justice whether some of petitioner's conditions were psychical answered: "No, I think they are physical." And when the trial justice inquired further: "Entirely a physical condition?" he replied: "Yes, it's very consistent in all three examinations." The petitioner seeks to brush aside this testimony by pointing out that Dr. Hammond is not a psychiatrist. Neither is Dr. Simon. In fact both are orthopedists. In any event the weight of their testimony was solely for the trial justice to decide. For the foregoing reasons we find no error in the decision or in the decree based thereon.

The petitioner's second point that the trial justice committed prejudicial error during the trial rests on certain alleged erroneous rulings on the admission of evidence. We see no reason for discussing such rulings separately. None of them, in our opinion, bears directly upon the question whether petitioner is presently incapacitated by a psychical injury. And if any of them may do so indirectly we do not think they were prejudicial to that phase of petitioner's case. Nor do we think those rulings, assuming they were erroneous, could have adversely affected petitioner's claim of incapacity based on his physical injury. On that issue there was evidence unobjected to which supports the trial justice's decision, so that even if the rulings in question had been favorable to petitioner there would still have been a conflict in the evidence which in a workmen's compensation case only the trial justice could resolve. From our perusal of the transcript we think that notwithstanding such rulings he received a fair and impartial trial. There is, therefore, no merit in the contentions briefed and argued under his second point.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Aram A. Arabian,* for petitioner.

*Adler & Zucker, Martin M. Zucker,* for respondent.